IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| KEVIN TON and CYNTHIA TRAN, | ) |
| Plaintiffs, | ) Case No. |
| v. | ) FILED: JUNE 3, 2008 |
| | ) 08CV3192         TG |
| CITY OF BURBANK, DET. COAKLEY (FNU), | ) JUDGE ZAGEL |
| and UNNAMED BURBANK POLICE OFFICERS, | ) Judge MAGISTRATE JUDGE MASON |
| Defendants. | ) Jury Demand |

**COMPLAINT**

Plaintiffs, KEVIN TON and CYNTHIA TRAN, by their attorney, KURT H. FEUER, complaining of Defendants, CITY OF BURBANK, DET. COAKLEY, and UNNAMED BURBANK POLICE OFFICERS (collectively, "Defendant Officers"), state as follows:

**Introduction**

1. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution. Plaintiffs also bring several related state law claims.

**Jurisdiction and Venue**

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

3. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all of the parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within this district.

**Background**

4.  Kevin Ton and Cynthia Tran reside at 6725 W. 81st Street, Burbank, Illinois, in a 3900 square foot single family home in a residential neighborhood.

5.  On May 19, 2008, Mr. Ton was at home with an acquaintance whom he met through his nail salon business, Steven Baldwin.

6.  At approximately 10:00 a.m., the front door bell rang, and when Mr. Ton opened the door he was confronted by a man wearing sun glasses who shoved a pistol into his midsection and forced Mr. Ton into the foyer of his home.

7.  Upon entering the home the intruder threatened to kill Mr. Ton and fired a shot from his pistol into the foyer wall.

8.  The intruder then went into the house and discovered Mr. Baldwin hiding under a kitchen table, and forced both Ton and Baldwin into a bathroom

9.  The intruder threatened to kill both Ton and Baldwin in the bathroom and fired a shot into the bathroom wall. The intruder then robbed them, taking cash and valuables from Mr. Ton.

10.  The intruder ordered Ton out of the bathroom to get his dog and Baldwin's dog, which were running around the house barking, and put the dogs into the computer room adjacent

to the bathroom.  The intruder stood at the bathroom door while Ton went into the kitchen to get the dogs.

    11.  While in the kitchen, Ton was next to the patio door, and he bolted out of the patio door and ran to his neighbor's house.

    12.  At his neighbor's house Ton called 911 and told the dispatcher of the robbery in progress.  Burbank police arrived approximately five minutes later.  Ton talked to police at his neighbor's house and gave a description of the robber.  The police told him to remain at the neighbor's house.

    13.  Ms. Tran returned home from work after Ton called her and police took her to the neighbor's house where she joined Ton.  The police returned some time later and evacuated Ton, Tran and the neighbors to an armored vehicle and then to a police van out on the street in view of Ton's residence.

    14.  While in the van Ton saw an officer's notes that said there was no hostage in the house, and an officer told him that Baldwin had come out of the house when police made an announcement over loudspeakers telling anyone in the house to come out.

    15.  While in the van Ton and Tran observed a SWAT team enter the house and then emerge after approximately ten minutes without the intruder.

16. After the SWAT team exited the house a white male Burbank detective came to the van and took Ton out on the sidewalk. He questioned Ton about how he knew Baldwin and why Baldwin's car was in the garage.

17. This detective continued to question Ton outside of the van. He told Ton he would give him one last chance to tell the truth and accused Ton of knowing the intruder, who like Ton is Asian-American, and setting up the robbery as an insurance scam. This detective also accused Baldwin of being part of the set up.

18. Although it was cold outside and Ton was visibly shivering because he had escaped the house barefoot and wearing a light sleeveless t-shirt, the detective insisted on interrogating him outside of the van and refused to let him sit in the van or a police car.

19. While standing there as ordered by the detective, Ton observed Burbank police with a dog go into his home.

20. Yet another white male Burbank police detective, upon information and belief a Detective Coakley, then approached Ton and told him that he was taking him to the police station for further questioning. Ton stated that he wished to remain at his home but the detective told him that he had to go to the police station.

21. Detective Coakley put Ton in a police car and drove him to the Burbank police station, interrogating him during the ride. Upon arriving at the station he put Ton in an interrogation room.

22. At the police station the detective who questioned Ton outside the van interrogated Ton again. He told Ton that he would be arrested if the police found drugs in Baldwin's car, stated that all Blacks do drugs, and asked why Ton had Baldwin, who is African-American, over at his house in a white neighborhood.

23. Ton later learned that police ransacked Baldwin's car but found no drugs.

24. The detective also asked Ton how much his house was worth and how he could afford it. He accused Ton of dealing drugs and told him he would be in trouble if the police found out what he was doing.

25. The police held Ton at the station from approximately 4:30 p.m. until 9:00 p.m. During that time police officers would not let Ton leave or even use the bathroom. Ton was ultimately released from custody with no charges being filed against him.

26. While at the scene a police officer approached Ms. Tran and told her that police wanted to question her at the police station. Ms. Tran drove herself to the station and waited

there for a lengthy period of time until she was interrogated by a Sgt. Gagle.

27. Sgt. Gagle asked Ms. Tran numerous questions about Baldwin and what he was doing in the house. Sgt. Gagle then told Ms. Tran that she was free to go.

28. A white male detective told Tran that he would take her back to the house to see what was missing. Upon entering the house Ms. Tran discovered that every room in the house had been ransacked, including all drawers opened and contents removed, closets rifled through, mattresses upended, and items and furniture strewn about everywhere. Insulation in the attic had even been ripped out.

29. Ms. Tran found a fire box containing valuables in the attic that had been opened but none of the valuables removed, indicating to her that it had been opened by police, not the intruder. Ms. Tran asked the detective if the police had done this to her house and he stated that he did not know who did it.

30. The following day Detective Coakley called Plaintiffs and told them to return to the police station. He stated that he was still not satisfied with Ton's answers as to why Baldwin was in the house and asked the same questions Ton was asked on the day of the incident.

## Count I -- Section 1983
## Fourth Amendment
## (Unlawful Search)

31. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

32. As described more fully above, the Defendant Officers, acting under color of law and within the scope of their employment as Burbank Police Officers, improperly and unreasonably exceeded the scope of their lawful authority in conducting an unlawful and unreasonable search of Plaintiffs' residence, thereby violating the United States Constitution.

33. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiffs.

34. As a result of the above-described wrongful infringement of Plaintiffs' rights, Plaintiffs suffered damages, including, but not limited to, mental distress and anguish.

WHEREFORE Plaintiffs respectfully request this Court to enter judgment for monetary damages against Defendant Officers, as well as punitive damages against the Defendant Officers in their individual capacities, and to award Plaintiffs their reasonable attorneys' fees and costs, and for any other such relief as this Court deems appropriate.

**Count II -- State Law
Illinois Constitution
(Unlawful Search)**

35. Each of the foregoing Paragraphs 1 through 30 is incorporated as if restated fully herein.

36. As described more fully above, the Defendant Officers, acting under color of law and within the scope of their employment as Burbank Police Officers, improperly exceeded the scope of their lawful authority in conducting an unlawful and unreasonable search of Plaintiffs' residence, thereby violating Illinois law and the Illinois Constitution.

37. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

38. As a proximate result of this misconduct, Plaintiffs suffered damages, including but not limited to mental distress and anguish.

WHEREFORE Plaintiffs respectfully request this Court to enter judgment for monetary damages against Defendant Officers, as well as punitive damages against the Defendant Officers in their individual capacities, and to award Plaintiffs their reasonable attorneys' fees and costs, and for any other such relief as this Court deems appropriate.

### Count III -- 42 U.S.C. 1983
### Claim For False Detention, Arrest, and Imprisonment

39. Each of the foregoing Paragraphs 1 through 30 is incorporated as if restated fully herein.

40. The actions of the Defendant officers in falsely detaining, arresting and imprisoning Plaintiff Ton without reasonable suspicion or probable cause violated his Fourth Amendment rights to be free from unreasonable search and seizure under the United States Constitution, and thus violated 42 U.S.C. 1983.

41. The actions of the Defendant Officers were the direct and proximate cause of the violations of Plaintiff Ton's Fourth Amendment rights and caused him damages, including, but not limited to, mental distress and anguish.

WHEREFORE Plaintiffs respectfully request this Court to enter judgment for monetary damages against Defendant Officers, as well as punitive damages against the Defendant Officers in their individual capacities, and to award Plaintiffs their reasonable attorneys' fees and costs, and for any other such relief as this Court deems appropriate.

### COUNT IV -- State Law Claim
### Respondeat Superior

42. Each of the foregoing Paragraphs 1 through 30 is incorporated as if restated fully herein.

43. In committing the acts alleged in the preceding

paragraphs, Defendant Officers were agents of the City of Burbank, and were acting at all relevant times within the scope of their employment.

44. Defendant City of Burbank is liable as principal for all torts committed by its agents.

WHEREFORE Plaintiffs respectfully request this Court to enter judgment for monetary damages against Defendant the CITY OF BURBANK, to award Plaintiffs their attorneys' fees and costs, and for any other such relief as this Court deems appropriate.

### COUNT V -- State Law Claim
### Indemnification

45. Each of the foregoing Paragraphs 1 through 30 is incorporated as if restated fully herein.

46. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

47. Defendant Officers, who all are or were employees of the City of Burbank, acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE Plaintiffs respectfully request this Court to enter judgment for monetary damages against Defendant the CITY OF BURBANK, to award Plaintiff his attorneys' fees and costs, and for any other such relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

_____
Attorney for Plaintiff

Kurt H. Feuer
Attorney at Law
312 North May St
Suite 100
Chicago, IL 60607
(312) 243-5900