IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN TON and CYNTHIA TRAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08 C 3192 |
| | ) | |
| CITY OF BURBANK, DET. COAKLEY | ) | Judge Zagel |
| (FNU), and UNNAMED BURBANK POLICE | ) | |
| OFFICERS, | ) | Magistrate Judge Mason |
| | ) | |
| Defendants. | ) | JURY DEMAND |

**DEFENDANTS' PARTIAL ANSWER TO PLAINTIFFS' COMPLAINT AND AFFIRMATIVE DEFENSES**

NOW COME the Defendants CITY OF BURBANK ("Burbank"), DETECTIVE THOMAS J. COAKLEY ("Coakley") and UNNAMED BURBANK POLICE OFFICERS, by and through their attorneys, Louis F. Cainkar, Ltd., and for their answer to the complaint, state as follows:

**Introduction**

1.   This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution. Plaintiffs also brings several related state law claims.

**ANSWER:**   The Defendants admit that admit that instant action brought pursuant to 42 U.S.C. §1983 and that the complaint seeks to allege state law claims.

**Jurisdiction and Venue**

2.   This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

**ANSWER:** The Defendants admit the truth of the averments made in paragraph 2.

3. Venue is proper under 28 U.S.C. §1391 (b). On information and belief, all of the parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within this district.

**ANSWER:** The Defendants admit the truth of the averments made in paragraph 3.

## Background

4. Kevin Ton and Cynthia Tran reside at 6725 W. 81st Street, Burbank, Illinois, in a 3900 square foot single family home in a residential neighborhood.

**ANSWER:** Defendants lack sufficient knowledge to form a belief as to the truth of the averments made in paragraph 4.

5. On May 19, 2008, Mr. Ton was at home with an acquaintance whom he met through his nail salon business, Steven Baldwin.

**ANSWER:** Defendants admit that Mr. Ton was at home with a gentleman named Steven Baldwin but lack sufficient knowledge to form a belief as to the truth of the remaining averments.

6. At approximately 10:00 a.m., the front door bell rang, and when Mr. Ton opened the door he was confronted by a man wearing sun glasses who shoved a pistol into his midsection and forced Mr. Ton into the foyer of his home.

**ANSWER:** Defendants lack sufficient knowledge to form a belief as to the truth of the averments made in paragraph 6.

7. Upon entering the home the intruder threatened to kill Mr. Ton and fired a shot from his pistol into the foyer wall.

**ANSWER:** Defendants admit that a round from a gun was fired into the foyer wall but lack sufficient knowledge to form a belief as to the truth of the remaining averments.

8. The intruder then went into the house and discovered Mr. Baldwin hiding under a kitchen table, and forced both Ton and Baldwin into a bathroom.

**ANSWER:** Defendants lack sufficient knowledge to form a belief as to the truth of the averments made in paragraph 8.

9. The intruder threatened to kill both Ton and Baldwin in the bathroom and fired a shot into the bathroom wall. The intruder then robbed them, taking cash and valuables from Mr. Ton.

**ANSWER:** Defendants admit that a round from a gun was fired into the bathroom wall but lack sufficient knowledge to form a belief as to the truth of the remaining averments.

10. The intruder ordered Ton out of the bathroom to get his dog and Baldwin's dog, which were running around the house barking, and put the dogs into the computer room adjacent to the bathroom. The intruder stood at the bathroom door while Ton went into the kitchen to get the dogs.

**ANSWER:** Defendants lack sufficient knowledge to form a belief as to the truth of the averments made in paragraph 10.

11. While in the kitchen, Ton was next to the patio door, and he bolted out of the patio door and ran to his neighbor's house.

**ANSWER:** Defendants lack sufficient knowledge to form a belief as to the truth of the averments made in paragraph 11.

12. At his neighbor's house Ton called 911 and told the dispatcher of the robbery in progress. Burbank police arrived approximately five minutes later. Ton talked to police at his neighbor's house and gave a description of the robber. The police told him to remain at the neighbor's house.

**ANSWER:** Defendants admit that Ton called 911 from his neighbor's home to advise of the armed robbery but deny the remaining averments in paragraph 12. Defendants deny that only Burbank police officers responded to the 911 call.

13. Ms. Tran returned home from work after Ton called her and police took her to the neighbor's house where she joined Ton. The police returned some time later and evacuated Ton, Tran and the neighbors to an armored vehicle and then to a police van out on the street in view of Ton's residence.

**ANSWER:** Defendants admit that at one point a Ms. Tran arrived on the scene but lack sufficient knowledge to form of belief as to the truth of the remaining averments.

14. While in the van Ton saw an officer's notes that said there was no hostage in the house, and an officer told him that Baldwin had come out of the house when police made an announcement over loudspeakers telling anyone in the house to come out.

**ANSWER:** Defendants lack sufficient knowledge to form of belief as to the truth of what Ton saw but admit that Baldwin exited the house at the request of officers on the scene.

15. While in the van Ton and Tran observed a SWAT team enter the house and then emerge after approximately ten minutes without the intruder.

**ANSWER:** Lack sufficient knowledge to form a belief as to what Ton and Tran observed.

16. After the SWAT team exited the house a white male Burbank detective came to the can and took Ton out on the sidewalk. He questioned Ton about how he knew Baldwin and why Baldwin's car was in the garage.

**ANSWER:** Defendants admit that Ton was asked if he knew Baldwin and inquired as to why Baldwin's vehicle was parked in his garage.

17. This detective continued to question Ton outside of the van. He told Ton he would give him one last chance to tell the truth and accused Ton of knowing the intruder, who like Ton is Asian-American, and setting up the robbery as an insurance scam. This detective also accused Baldwin of being part of the set up.

**ANSWER:** Defendants deny the truth of the averments made in paragraph 17.

18. Although it was cold outside and Ton was visibly shivering because he had escaped the house barefoot and wearing a light sleeveless t-shirt, the detective insisted on interrogating him outside of the van and refused to let him sit in the can or a police car.

**ANSWER:** Defendants deny the truth of the averments made in paragraph 18.

19. While standing there as ordered by the detective, Ton observed Burbank police with a dog go into his home.

**ANSWER:** Defendants lack sufficient knowledge to form a belief as to what Ton observed.

20. Yet another white male Burbank police detective, upon information and belief a Detective Coakley, then approached Ton and told him that he was taking him to the police station for further questioning. Ton stated that he wished to remain at his home but the detective told him that he had to go to the police station.

**ANSWER:**    Defendants admit that Ton was brought to the police station for an interview as to the facts surrounding the armed robbery. Defendants deny any inference that this interview took place without the consent of Ton.

21.    Detective Coakley put Ton in a police car and drove him to the Burbank police station, interrogating him during the ride.  Upon arriving at the station he put Ton in an interrogation room.

**ANSWER:**    Defendants admit that Ton and Detective Coakley spoke while they were driving to the police station and admit an interview took place at the police station.

22.    At the police station the detective who questioned Ton outside the van interrogated Ton again.  He told Ton that he would be arrested if the police found drugs in Baldwin's car, stated that all Blacks do drugs, and asked why Ton had Baldwin, who is African-American, over at his house in a white neighborhood.

**ANSWER:**    Defendants deny the truth of the averments made in paragraph 22.

23.    Ton later learned that police ransacked Baldwin's car but found no drugs.

**ANSWER:**     Defendants lack sufficient knowledge to form of belief as to the truth of what Ton heard.

24.    The detective also asked Ton how much his house was worth and how he could afford it.  He accused Ton of dealing drugs and told him he would be in trouble if the police found out what he was doing.

**ANSWER:**    Defendants deny the truth of the averments made in paragraph 24.

25.     The police held Ton at the station from approximately 4:30 p.m. During that time police officers would not let Ton leave or even use the bathroom. Ton was ultimately released fro custody with no charges being filed against him.

**ANSWER:**   Defendants admit that Ton remained at the police station until the interview was complete. Defendants deny the averment that Ton was not free to leave or use the bathroom. Defendants admit that no charges were file against Ton.

26.     While at the scene a police officer approached Ms. Tran and told her that police wanted to question her at the police station. Ms. Tran drove herself to the station and waited there for a lengthy period of time until she was interrogated by a Sgt. Gagle.

**ANSWER:**   Defendants admit that Ms. Tran was interviewed by Burbank Police at the police station.

27.     Sgt. Gagle asked Ms. Tran numerous questions about Baldwin and what he was doing in the house. Sgt. Gagle then told Ms. Tran that she was free to go.

**ANSWER:**   Defendants admit that Ms. Tran was asked a number of questions and that she was free to leave at any time she desired.

28.     A white male detective told Tran that he would take her back to the house to see what was missing. Upon entering the house Ms. Tran discovered that every room in the house had been ransacked, including all drawers opened and contents removed, closets rifled through, mattresses upended, and items and furniture strewn about everywhere. Insulation in the attic had even been ripped out.

**ANSWER:**   Defendants deny the truth of the averments made in paragraph 28.

29.     Ms. Tran found a fire box containing valuables in the attic that had been opened but none of the valuables removed, indicating to her that it had been opened by police, not the

intruder. Ms. Tran asked the detective if the police had done this to her house and he stated that he did not know who did it.

**ANSWER:** Defendants demy the truth of the averments made in paragraph 29.

30. The following day Detective Coakley called Plaintiffs and told them to return to the police station. He stated that he was still not satisfied with Ton's answers as to why Baldwin was in the house and asked the same questions Ton was asked on the day of the incident.

**ANSWER:** Defendants deny the truth of the averments made in paragraph 30.

## Count I – Section 1983 Fourth Amendment
## (Unlawful Search)

31. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

**ANSWER:** Defendants incorporate their answers for paragraphs 1 through 30 as their answer to paragraph 31.

32. As described more fully above, the Defendant Officers, acting under color of law and within the scope of their employment as Burbank Police Officers, improperly and unreasonably exceeded the scope of their lawful authority in conducting an unlawful and unreasonable search of Plaintiffs' residence, thereby violating the United States Constitution.

**ANSWER:** Defendants deny the truth of the averments made in paragraph 32.

33. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiffs.

**ANSWER:** Defendants deny the relevance and truth of the averments made in paragraph 33.

34. As a result of the above-described wrongful infringement of Plaintiff's rights, Plaintiffs suffered damages, including, but not limited to, mental distress and anguish.

**ANSWER:** Defendants deny the truth of the averments made in paragraph 34.

WHEREFORE Defendants respectfully request that the complaint be dismissed with costs awarded in their favor.

### Count II – State Law Illinois Constitution (Unlawful Search)

Defendants do not answer Count II as it is the subject of a motion to dismiss.

### Count III – 42 U.S.C. 1983
### Claim For False Detention, Arrest, and Imprisonment

39. Each of the foregoing Paragraphs 1 through 30 is incorporated as if restated fully herein.

**ANSWER:** Defendants incorporate their answers for paragraphs 1 through 30 as their answer to paragraph 39.

40. The actions of the Defendant officers in falsely detaining, arresting and imprisoning Plaintiff Ton without reasonable suspicion or probable cause violated his Fourth Amendment rights to be free from unreasonable search and seizure under the United States Constitution, and thus violated 42 U.S.C. 1983.

**ANSWER:** Defendants deny the truth of the averments made in paragraph 40.

41. The actions of the Defendant Officers were the direct and proximate cause of the violations of Plaintiff Ton's Fourth Amendment rights and caused him damages, including, but not limited to, mental distress and anguish.

**ANSWER:**    Defendants deny the truth of the averments made in paragraph 41.

WHEREFORE Defendants respectfully request that the complaint be dismissed with costs awarded in their favor.

### COUNT IV – State Law Claim—*Respondeat Superior*

The Defendants do not answer Count IV as it is the subject of a motion to dismiss.

### COUNT V – State Law Claim—Indemnification

45.    Each of the foregoing Paragraphs 1 through 30 is incorporated as if restated fully herein.

**ANSWER:**    Defendants incorporate their answers for paragraphs 1 through 30 for their answer to paragraph 45.

46.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER:**    Defendant admits only that Illinois law is what it provides.

47.    Defendant Officers, who all are or were employees of the City of Burbank, acted within the scope of their employment in committing the misconduct described herein.

**ANSWER:**    Defendants deny that all of the individuals who searched the residence in question were Burbank employees.  Defendants further deny that any misconduct occurred.

WHEREFORE Defendants respectfully request that the complaint be dismissed with costs awarded in their favor.

S/     Joseph Cainkar

## AFFIRMATIVE DEFENSES

1. The individual defendants are entitled to qualified immunity for Counts I and III of the Complaint.

S/     Joseph Cainkar

JOSEPH CAINKAR - 06281109
LOUIS F. CAINKAR, LTD.
Attorneys for the Defendants
30 North LaSalle Street - #3922
Chicago, Illinois 60602-3333
(312) 236-3985

## CERTIFICATE OF SERVICE

I, the undersigned, an attorney, on oath state: I served a copy of the Answer by e-mailing a copy to the CMT System for the Northern District of Illinois on June 20, 2008.

S/     Joseph Cainkar